

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| ALTON ADAMS, <br> Plaintiff, <br> <br> vs. <br> <br> <br> DEPUTY DAVID PRITCHARD; and <br> JAY KOON, Lexington County Sheriff, <br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 3:17-01108-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Alton Adams (Adams) filed this lawsuit alleging a claim under 42 U.S.C. § 1983 (§ 1983) for deprivation of property without due process in violation of the Fourteenth Amendment and a state law claim for defamation/libel. The Court has jurisdiction over the matter under 28 U.S.C. § 1331 and § 1367. Pending before the Court is Defendants David Pritchard (Pritchard) and Jay Koon's (Koon; collectively with Pritchard, Defendants) motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Defendants' motion for summary judgment will be granted.

1

## II. FACTUAL AND PROCEDURAL HISTORY

This case arises from Adams's arrest for two counts of forgery on May 23, 2014, in Lexington, South Carolina. ECF No. 33-1 at 1. Adams's cousin, David Lawrence Adams, was arrested around the same time as Adams on a charge of Sexual Criminal Conduct with a Minor. ECF No. 36 at 1. During Adams's incarceration, his photo and general arrest information were uploaded as public inmate information on the Lexington County Detention Center (Detention Center) website. ECF No. 33-1 at 1. However, Adams's picture was inadvertently placed on David Adams's inmate information page, with David Adams's name and arrest information. *Id.*.

After Adams was arrested, he called his employer, Kevin Gunter, from the Detention Center and asked him to post bond on the forgery charges. ECF No. 36-1 at 2. According to Gunter's affidavit, Gunter informed Adams he was out of town and asked him to call back the following day. *Id*. After Gunter hung up with Adams, he searched for Adams on the Detention Center website. *Id*. Gunter "saw Alton's jail photo but the name was David Lawrence Adams. The charge was Sexual Criminal Misconduct with a Minor." *Id*. Gunter subsequently disassociated himself with Adams and fired him from his position. *Id*. Gunter believed the photo was not an error, but rather Adams had engaged in some form of sexual misconduct (as opposed to the actual charges for forgery) under a false name. ECF No. 36 at 1. Gunter stated he did not learn the truth until 2016. ECF No. 36-1 at 2.

According to Adams's affidavit, he went to the Lexington County Sheriff's Department (Sheriff's Office)[1] sometime in 2015 in an attempt to have this error corrected. ECF No. 36-3 at 1. Adams gave Pritchard the photo and Pritchard "took it to the back." *Id*. According to Adams,

---

[1] Although the Detention Center is run by the Sheriff's Office, the responsibility for updating public inmate information on the Detention Center website lies with the Detention Center employees, not the Sheriff's office.

while he was waiting on Pritchard to return, two other deputies "emerged from the back." *Id.* One deputy informed Adams there was an active warrant out for him and the other deputy told Adams he smelled alcohol on Adams's breath. *Id.* Adams "left the photo behind and fled." *Id.* at 2. Adams never attempted to contact Pritchard again. Adams made no further effort to have his photo removed from his cousin's profile until his counsel sent a letter to the Sheriff's Office General Counsel on or about January 20, 2017. See ECF No. 33-2. After Adams's counsel sent the letter, the error was timely corrected. ECF No. 37 at 5.

In Adams's deposition, he acknowledged Pritchard had always been "fair" to him and they spoke to each other when they saw each other around town. ECF No. 33-2 at 48. Adams further stated he sought out Pritchard when he saw him in the Sheriff's Office because he thought Pritchard would help him. *Id.* at 48-49. Adams stated he knew Pritchard did not work at the Detention Center, where the error occurred, nor did Adams believe Pritchard posted the photo. *Id*. at 44-48.

Adams filed this action on April 28, 2017. ECF No. 1. Defendants filed their answer on May 22, 2017. ECF No. 10. On July 30, 2018, Defendants filed their motion for summary judgment. ECF No. 33. Adams thereafter filed his response in opposition, ECF No. 36, and Defendants replied, ECF No. 37. Having been fully briefed on the relevant issues, the Court is now prepared to discuss the merits of the motion.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in his favor. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**IV. CONTENTIONS OF THE PARTIES**

Adams has asserted a claim pursuant to § 1983 for violation of his due process rights. Defendants argue they are entitled to Eleventh Amendment immunity on Adams's federal claim. Additionally, they argue Adams has failed to demonstrate a violation of his due process rights, and therefore his claim pursuant to § 1983 fails as a matter of law. Defendants advance there is no evidence in the record showing this error was anything other than the result of a mistake or a negligent act. Defendants also assert they are not "persons" within the meaning of § 1983 and therefore Adams's federal claim should be dismissed as a matter of law. Finally, Defendants allege they are entitled to qualified immunity from Adams's federal claim.

Defendants state they are immune from Adams's defamation/libel state law claim under the South Carolina Tort Claims Act, or alternatively, Adams's defamation/libel claim is barred by the statute of limitations and thus should be dismissed as a matter of law. Further, Defendants aver they are entitled to qualified immunity on Adams's state law claim. Finally, Defendants argue Adams's state law claim for defamation/libel is unable to withstand summary judgment because this case involves a matter of public interest and Adams failed to show proof of any actual malice.

Adams disagrees with all of Defendants' assertions and insists he is entitled to relief on both of his claims. Therefore, Adams maintains Defendants' motion for summary judgment should be denied.

**V. DISCUSSION AND ANALYSIS**

**A. Adams's Federal Claim**

Defendants moved for summary judgment on Adams's § 1983 claim, arguing, *inter alia*, Defendants are entitled to Eleventh Amendment immunity. The Eleventh Amendment bars suits by citizens against non-consenting states brought in either state or federal court. *Alden v. Maine*,

527 U.S. 706, 712-13 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1 (1890). Such immunity extends to arms of the state, including a state's agencies, instrumentalities, and employees when sued in their official capacity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Although Eleventh Amendment immunity does not bar a suit where a state has given consent to be sued, or where Congress abrogates the sovereign immunity of a state, neither of those exceptions applies here.[2] As state officials, South Carolina sheriffs and employees of South Carolina sheriffs are entitled to Eleventh Amendment immunity from suit in federal court when sued in their official capacity. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996).

Thus, the Court must determine whether Defendants were sued in their official or personal capacities. As stated above, claims against a state employee in his official capacity are barred by the Eleventh Amendment, *see Will v. Mich. Dep't. of State Police*, 491 U.S. 58 (1989), but claims against a state employee in his personal capacity are not. *See Hafer v. Melo,* 502 U.S. 21, 23 (1991). The Supreme Court has held state employees acting in their official capacity are entitled to Eleventh Amendment immunity because they are not "persons" subject to liability under § 1983. *Id*. at 25. A suit against a state employee in his official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[W]hen officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer*, 502 U.S. at 25; *see also* Fed. R. Civ., P., 25(d)(1); Fed. R. App. P. 43(c)(1). For this reason, the "only immunities available to a defendant in an official-capacity action are those that the governmental entity possesses." *Id*. "The phrase

---

[2] Congress has not abrogated the states' sovereign immunity under § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343 (1979), and South Carolina has not consented to suit in federal district court, *see* S.C. Code Ann. § 15-78-20(e).

'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id*. at 26.

Although Adams cursorily alleges in his complaint Defendants were "acting in their individual as well as their official capacity," the uncontroverted evidence in the record shows Koon, the Lexington County Sheriff, was sued in his official capacity. Adams has failed to allege any facts showing Koon had any involvement in the circumstances giving rise to the present litigation, other than the fact he is the head of the arm of the State that allegedly caused Adams's injury. Adams also named Koon with his official title, "Jay Koon, Lexington County Sheriff," in the complaint. Indeed, if Koon were to die or leave office, he would be replaced in this litigation by the incoming Lexington County Sheriff. Therefore, the Court agrees with Defendants that Koon is entitled to Eleventh Amendment immunity on Adams's § 1983 claim.

Adams claims he has sued Pritchard in his personal capacity and therefore Pritchard is not entitled to Eleventh Amendment immunity. The Court agrees. A suit against a state employee in his personal capacity seeks to impose individual liability upon a government officer for actions taken under color of state law. *Id*. Therefore, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166. As the Supreme Court set forth in *Hafer, supra*, "[s]tate officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts." *Hafer*, 502 U.S. at 31.

In this case, Adams has alleged facts sufficient to show he intends to sue Pritchard in his personal capacity. Adams avers Pritchard agreed to help Adams get rid of the erroneously posted

7

photo on his cousin's inmate information profile, and Adams contends Pritchard failed to correct this error in a timely fashion.  For purposes of determining whether Adams has brought this suit against Pritchard in his official or personal capacity, it is enough to allege Pritchard, acting under color of state law as a Deputy Sheriff, deprived Adams of a federal right.  Thus, the Court concludes Adams has sued Pritchard in his personal capacity.

Pritchard asserts that in the event the Court determines he was sued in his personal capacity, he is entitled to qualified immunity.  The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard that the Court is to follow in determining whether the defendant is protected by this immunity. That decision held government officials performing discretionary functions generally are shielded from liability for civil damages[3] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has set forth two prongs a court must consider in deciding a qualified immunity claim: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, (2) whether that right was clearly established at the time of the alleged violation. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  Courts may exercise their sound discretion in deciding which of the two prongs should be addressed in light of the circumstances in a particular case.  *See Pearson v. Callahan*, 555 U.S. 223 (2009).  However, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit

---

[3] The Court notes Adams seeks only money damages in this case, as the error giving rise to this litigation has already been corrected and no equitable relief was sought.

of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

The only constitutional right Adams avows Defendants violated in this case is his right to have erroneous prejudicial information removed or expunged from a prison file as set forth by the Fourth Circuit in *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979). Defendants appear to accept this assertion by citing to the same case in their memorandum in support of their motion for summary judgment. The Court disagrees. *Paine* held "in certain limited circumstances, a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file; (2) that the information is false; and (3) that it is relied upon to a constitutionally significant degree." *Id*. at 201. The Fourth Circuit elaborated on the third element:

> The requirement of the reliance to a constitutionally significant degree has two dimensions. The first is the nature of the adverse administrative decision made on the basis of erroneous information. If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play…The nature of the false information is the second dimension. If the alleged error is a technical one which would not reasonably be a factor relied on in the decision-making process, then no claim for relief will lie. If the error is more significant, i.e., involving the inmate's past criminal record or his record of disciplinary offenses while in prison, then it may reasonably be relied on and fundamental fairness requires its expunction.

*Id*. at 202.

*Paine* is distinguishable from the instant case. First, the plaintiff in *Paine* was incarcerated at the time he filed that action. Adams has long since been released following his arrest on forgery charges, and he was never a state prison inmate. Second, the false information Adams complains of is not in his file; it is in his cousin's file. Third, there has been no adverse administrative decision based on the erroneous information contained in Adams's cousin's file, nor was the information

9

used to deny parole or any of the other possibilities contemplated by the Fourth Circuit in deciding *Paine*. Finally, and most importantly, Adams has not alleged a cognizable, protected liberty interest infringed upon by Pritchard's actions. The Court therefore holds Adams has failed to allege a constitutional right has been violated. The inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield,* 156 F.3d at 567.

Nevertheless, assuming arguendo Adams has presented sufficient evidence of a constitutional violation, Pritchard is still entitled to qualified immunity. In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298. The record before the Court shows Pritchard performed the discretionary function of his official duties in an objectively reasonable fashion. Pritchard agreed to help Adams try to fix this error even though he had no involvement in the circumstances giving rise to the error. Before Pritchard could return from the back of the Sheriff's Office and attempt to help Adams file a formal report, Adams had already left the Sheriff's Office. Further, Adams failed to make any additional attempt to contact Pritchard. Under these circumstances, Pritchard did not transgress any statutory or constitutional rights of Adams that he was aware of in the discretionary exercise of his professional judgment. Therefore, Pritchard is entitled to qualified immunity.

For these reasons, the Court will grant Defendants' motion for summary judgment on Adams's § 1983 claim. Therefore, the Court need not address the parties other arguments on this issue.

**B. Adams's State Law Claim**

Initially, the Court notes Adams's state law claim for defamation/libel sounds in tort and is against government officials; therefore, the claim is controlled by the South Carolina Tort Claims Act (the Act), S.C. Code Ann. §§ 15-78-10, *et seq*. The Act provides, "This chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided in subsection (b)." S.C. Code Ann. § 15-78-70(a).

Subsection (b) provides "nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b). Read collectively, the preceding statutes make clear that a state official who commits a tort while acting within the scope of his official duty is liable only as set forth in § 15-78-70(b).

In Adams's response to the Defendants' motion for summary judgment, he argues the Act is inapplicable because Defendants acted with malice and he is bringing these claims against them in their individual capacities for actions outside of the scope of their official duties. However, Adams's complaint makes no assertion Defendants acted with malice, nor does it allege facts giving rise to a claim that Defendants were acting in their individual capacity outside of the scope of the Act.

Allowing Adams to now claim this cause of action is asserted against Defendants in their individual capacities or that they acted with malice would equate to allowing Adams to amend his complaint in response to Defendants' motion for summary judgment, which would be improper. *See generally* Fed. R. Civ. P. 15(a)(2) (providing a party may amend its pleading only with the opposing party's consent or the court's leave); *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir.2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Accordingly, the Court will grant Defendants' motion for summary judgment as to Adams's defamation/libel claim because Defendants are immune under the Act. Because the Court has determined the Defendants are immune, the Court declines to reach Defendants' arguments regarding the substance of Adams's defamation/libel claim, including whether or not Adams is a public figure, or their statute of limitations defense. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

## VI. CONCLUSION

Wherefore, based upon the foregoing discussion and analysis, it is the judgment of this Court Defendants' motion for summary judgment is **GRANTED** and Adams's due process claim and his state law claim for defamation/libel are **DISMISSED WITH PREJUDICE**. To the extent Adams has raised any other state claims, those claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Signed this 1st day of April, 2019, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE